BURGESS & ASSOCIATES, INC., an Ohio corporation, Plaintiff-Appellant,

v.

Ben C. KLINGENSMITH, an Individual, et al., Defendants-Appellees.

Ben C. KLINGENSMITH, an Individual, et al., Defendants-Appellants,

v.

BURGESS & ASSOCIATES, INC., an Ohio corporation, Plaintiff-Appellee.

Nos. 72–1557, 72–1556.

United States Court of Appeals, Ninth Circuit.

Nov. 6, 1973.

As Amended on Denial of Rehearing Dec. 19, 1973.

Robert D. Hornbaker (argued), Los Angeles, Cal., for Ben C. Klingensmith et al.

R. Douglas Lyon (argued), Reginald E. Caughey, of Lyon & Lyon, Los Angeles, Cal., for Burgess & Associates, Inc.

Before BROWNING and WRIGHT, Circuit Judges, and SOLOMON *, District Judge.

### SOLOMON, District Judge:

Both parties appeal from portions of a judgment holding one patent valid and infringed and another patent invalid.

Burgess & Associates, Inc. (Burgess) is the assignee of U. S. Patent No. 3,023,738 (738 patent) and U. S. Patent No. 3,367,480 (480 patent). Burgess brought this action for infringement of claims 1 and 2 of the 738 patent and claims 1, 2, and 4 of the 480 patent against Ben C. Klingensmith and his associates, ABM Industries, Inc., Donald Kanning, and Arthur Longstreet (Klingensmith). Klingensmith denied infringement and alleged in a counterclaim that the patents were invalid, or, if valid, had been misused.

The district court held that the 738 patent was valid and infringed. It also held the 480 patent was invalid. The court enjoined Klingensmith from infringing the 738 patent and ordered an accounting. Klingensmith appeals from the finding that the 738 patent was valid and infringed and Burgess appeals from the finding that the 480 patent is invalid.

### The 738 Patent: Infringement

The 738 patent describes a pneumatic free-piston vibrator. The vibrator is used in connection with a bowl with a helical track along its inside surface. The patented device vibrates parts placed in the bottom of the bowl, orienting them in a given direction and making them proceed up the helical path to a conveyor belt. The vibrator and feeder bowl are used to feed parts at a constant rate of speed and with a given spatial orientation.

Pneumatic vibrators to feed parts are old in the art. Burgess asserts that the older vibrators could control the frequency of the piston stroke but not its amplitude; that is, they could control the number of strokes per minute but not the length of the stroke. Burgess contends that the 738 vibrator achieves a higher rate of feed and more precise spatial orientation of parts by controlling the amplitude of the piston stroke.

Burgess originally applied for a patent on the 738 device on March 24, 1959. In his original application he claimed [1] ". . . a device having an inlet line for conducting gas under pressure to said device to effect recipricatory movement of said piston . . . ." That claim was rejected three times as unpatentable over the prior art. Burgess then cancelled that claim and substituted

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. The claim quoted here was typical of the claims of the first application. The full text of the claim reads as follows:

A pneumatic, free-piston vibration inducing device having an inlet line for conducting gas under pressure to said device to effect reciprocatory movement of said piston, and an outlet line for exhausting spent gas from said device, means in said inlet line for regulating the pressure of said gas, and means in said outlet line for regulating the pressure drop across said vibration inducing device.

claim 1 of the 738 patent.[2]   The claim contained the following language:

.   .   .   means coacting in response to the position of said piston in said chamber respectively to alternately apply said pressurized gas to opposite ends of the piston for a portion of its stroke,   .   .   .   [and] other means coacting in response to the position of said piston respectively to alternately couple the end of the chamber opposed to the applied gas to the outlet line for a portion of the piston stroke . . . .

The new sixteen-line claim was not merely an expanded version of the cancelled claim. Although the cancelled claim covered all devices "to effect reciprocatory movement of [the] piston", the claim as finally allowed contained specific means clauses describing which devices were covered. The means clauses narrowed the scope of the claim in two important respects:

(1) The means clauses limited the claim to devices in which "other means", as distinguished from the means used to connect the chamber with the inlet line, ". . . couple the end of the chamber opposed to the applied gas to the outlet line." In other words, the claim did not cover vibrators which use the same means to connect the ends of the piston chamber to both the inlet and outlet lines.

(2) The means clauses covered only devices which "alternately couple the ends of the chamber opposed to the applied gas to the outlet line for a portion of the stroke . . . ." In other words, the claim did not cover vibrators in which the end of the piston chamber opposed to the applied gas is not connected to the outlet line.

The first accused device of Klingensmith uses the same means to connect one side of the piston chamber with both the inlet and outlet lines. The second accused device has one side of the piston chamber which is not connected to the outlet line when it is the side "opposed to the applied gas." Neither device is covered by the means clauses in the 738 patent.

Burgess added the specific means clauses to obtain the patent. He is therefore estopped from claiming that Klingensmith's devices, not covered by those means clauses, infringe the 738 patent. ". . . [C]laims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent." Graham v. John Deere Co., 383 U.S. 1, 33, 86 S.Ct. 684, 702, 15 L.Ed.2d 545 (1966).

Burgess argues that Klingensmith's vibrators are the equivalents of the vibrator claimed in the 738 patent, even though not directly covered by its claims. Under the doctrine of equivalents a device infringes if it performs "substantially the same function in substantially the same way to obtain the same result" as the patented device. Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950).

2.  The full text of claim 1 of the 738 patent reads:

In a pneumatic vibratory apparatus having a resiliently supported article carrier and a vibration inducing piston disposed for free reciprocation in a chamber, an inlet line for supplying gas under pressure to said chamber, means for regulating the gas pressure in said inlet line, means coacting in response to the position of said piston in said chamber respectively to alternately apply said pressurized gas to opposite ends of the piston for a portion of its stroke, an outlet line for exhausting spent gas from the chamber, other means coacting in response to the position of said piston respectively to alternately couple the end of the chamber opposed to the applied gas to the outlet line for a portion of the piston stroke, and pressure regulating means coacting therewith in the outlet line to control the amplitude of reciprocation of said piston.

The second claim of the 738 patent included the first by reference.

File wrapper estoppel prevents the application of the doctrine of equivalents. "The patentee may not, by resort to the doctrine of equivalents, give to an allowed claim a scope which it might have had without the amendments, the cancellation of which amounts to a disclaimer." Schriber Co. v. Cleveland Trust Co., 311 U.S. 211, 221, 61 S.Ct. 235, 240, 85 L.Ed. 132 (1940); Keating v. Stearnes Imperial Co., 347 F.2d 444, 446 (7th Cir. 1965).

Neither the Klingensmith's devices infringed the 738 patent. The trial judge's contrary finding was clearly erroneous.

### The 738 Patent: Validity

Our holding that Klingensmith's devices do not infringe the 738 patent does not render moot the question of the patent's validity, since its validity is challenged in Klingensmith's counterclaim. Altvater v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943).

■ In his findings of fact, the trial judge found that the combination of elements defined in claims 1 and 2 of the 738 patent "produce a wholly new and unexpected result, the ability to control amplitude and frequency independently." Those claims in the patent cover only "means . . . to control the amplitude of reciprocation of [the] piston." Neither claim mentions a means to control amplitude and frequency independently. The trial judge therefore based his finding of nonobviousness on a means not claimed in the patent. Since the claims are the sole measure of the monopoly granted by the patent, Aro Mfg. Co., Inc. v. Convertible Top Replacement Co., Inc., 365 U.S. 336, 339, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961), the trial judge erred in relying on a means of the patented device not mentioned in the claims. See Lincoln Co. v. Stewart-Warner Corp., 303 U.S. 545, 550, 58 S.Ct. 662, 82 L.Ed. 1008 (1938); see also John Deere Co. v. Graham, 333 F.2d 529, 534 (8th Cir. 1964), aff'd 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

The 738 patent is a combination of old elements in a crowded field. We must scrutinize it with "a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." A & P Tea Co. v. Supermarket Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950).

Warren C. Burgess, Jr., the inventor of the 738 patent, admitted that the only element on the patented vibrator not found on prior vibrators was the valve on the outlet line controlling the pressure in the exhaust system. The valve was designed, according to the first two claims of the patent, to control the amplitude of reciprocation of the piston.

Two earlier patents taught that controlling the pressure in the exhaust system of a pneumatic device affected the amplitude of the piston stroke. Schmitz, U. S. Patent No. 2,699,224, Jan. 11, 1955, controlled the pressure differential on two sides of a free piston to vary the speed and force of impact of the piston. Hansen, U. S. Patent No. 1,056,170, March 18, 1913, taught that increasing the back pressure in the exhaust system of a pneumatic tool shortened the stroke of the piston.

It was undisputed that installing mufflers on vibrator exhaust systems created back pressure in the exhaust system which decreased the amplitude of the piston stroke. Ice clogging the outlet holes of vibrators had a similar effect.

In our view controlling the amplitude of the stroke by adding a valve on the outlet line was obvious in light of Hansen and Schmitz and the undisputed common experience with mufflers and icing.

■ The district court decision was embodied in a conclusionary memorandum of decision and in lengthy findings of fact and conclusions of law drafted by counsel for Burgess and adopted by the court. The court did not write an opinion. While it may be permissible for a judge to adopt findings proposed by counsel in complex patent cases, Industrial Building Materials, Inc. v. In-

terchemical Corp., 437 F.2d 1336, 1339 (9th Cir. 1970), an appellate court will scrutinize them more carefully than findings which are the product of the judge's own independent thought and research. *See* United States v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

■ We reject the trial court's finding of nonobviousness as clearly erroneous because it is based upon a means not claimed in the patent and because it is not supported by the evidence. We therefore hold that the 738 patent was invalid and not infringed.

### The 480 Patent

The 480 patent describes a pneumatic free-piston vibrator attached to the outside of a feed bowl similar to that used with the 738 patent. The pneumatic piston is radially disposed from the center of the bowl and oscillates substantially in the plane of the bowl's base plate.

Burgess admitted that the 480 patent was a combination of old elements and that the only invention was the spatial relationship between the vibrator and the feed bowl. Burgess alleges, however, that the side-mounted pneumatic vibrator greatly increases the load-carrying capacity of the feed bowl and is more efficient than vertically mounted pneumatic vibrators. The side-mounted vibrator also moves parts around the helical path inside the bowl more rapidly.

Burgess' own expert admitted that neither the increase in load-carrying ability nor the faster track speed were unexpected in light of the prior art. He was only suprised by the amount of the increase.

Side-mounted electrical vibrators were old in the art. The side-mounted electrical vibrators had advantages similar to those claimed by Burgess for his side-mounted pneumatic vibrator.

■ The trial judge found that "the relocation [of the pneumatic vibrator from the vertical to the horizontal position] would have been obvious to a person having ordinary skill in the art at the time of the alleged invention thereof." That finding is not clearly erroneous; it is amply supported by the evidence.[3]

Since we have held that both the 738 and 480 patents are invalid, we need not decide whether Burgess' alleged misuse of the patents barred an action for their infringement.

We do not find this to be an exceptional case justifying the award of attorney's fees under 35 U.S.C. § 285.

Klingensmith is entitled to costs.

The judgment holding U. S. Patent No. 3,023,738 valid and infringed is reversed. The judgment holding U. S. Patent No. 3,367,480 invalid is affirmed.

---

3. Burgess argues that the findings of fact, which he drafted and which the trial judge adopted, are not legally sufficient to support the finding of invalidity. *See* Graham v. John Deere Co., *supra* at 17, 86 S.Ct. 684. We do not commend the practice of preparing findings for a judge and then attacking their technical sufficiency on appeal.