**KAMEI–AUTOKOMFORT, a corporation of Germany, and Superior Industries, Inc., a corporation, Plaintiffs-Appellees,**

**v.**

**EURASIAN AUTOMOTIVE PRODUCTS (formerly Gus Mozart), Defendant-Appellant.**

No. 75–2383.

United States Court of Appeals, Ninth Circuit.

April 7, 1977.

Rehearing Denied May, 5, 1977.

Richard E. Alexander, Chicago, Ill., argued, for defendant-appellant.

Francis A. Utecht, argued, Fulwider, Patton, Rieber, Lee & Utecht, Long Beach, Cal., for plaintiffs-appellees.

Before BROWNING and KILKENNY, Circuit Judges, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

This is a patent infringement suit brought by Kamei-Autokomfort (Kamei), a company from West Germany, and Superior Industries, Inc. (Superior), a California corporation, against Eurasian Automotive Products (Eurasian), a California corporation. Kamei is the owner of U. S. Patent No. 3,812,124 (the Meier patent), which was applied for on December 13, 1965 and granted April 4, 1967. Kamei has licensed it solely and exclusively to Superior. The subject matter of the patent is a perforated synthetic plastic steering wheel cover with a porous foam core. Eurasian contended in the lower court that the Meier patent was invalid and that alternatively the steering wheel covers sold by Eurasian[1] did not infringe the Meier patent. The district court found the patent valid and infringed.

On appeal, Eurasian contends that the district court should have found the Meier patent void for obviousness under 35 U.S.C. § 103 in that:

1) No prior art references were cited to the patent examiner;

2) There were prior art references using the same operative elements as incorporated in the Meier patent;

3) The level of skill in the industry was high, and it would have been obvious to make a cover with the elements and design of the Meier patent; and

4) It was not shown that the patented cover actually breathes (as the District Court concluded in its Findings of Fact Nos. 9, 22, and 34 and Conclusion of Law No. 12)[2] as opposed to absorbs moisture.

---

* Honorable Robert Van Pelt, Senior United States District Judge, Lincoln, Nebraska, sitting by designation.

1. Eurasian only sells the allegedly infringing covers; they are made by a German company.

2. Findings of Fact Nos. 9, 22, and 34 are as follows:

9. As set forth in the patent in suit, when the patented steering wheel cover is gripped by the driver's hands, air is forced out of the porous foam core through the perforations. Upon release of the driver's grip, air returns into the porous core through such perforations. The perforations thus permit the cover to breathe internally and additionally, permit air to be directed to the steering wheel so as to prevent sweating of the wheel. The perforations also improve the gripability of the outer cover surface. Because of such breathing, hand-over-hand steering operation over the entire cover eliminates stagnation within the cells of the cover's core (P Ex. 1, Column 3, lines 42–61).

22. Plaintiffs introduced convincing evidence that the patented steering wheel cover substantially eliminated perspiration build-up (Comstock TT 89, Borick TT 94, Felder TT 112, Fehlhaber TT 499, and Meier TT 672), and this evidence was not disputed by defendant. Such perspiration build-up was reduced because of the cover's ability to breathe air in and out of the perforations as recited by the patent in suit (TT 688). The ability of the cover to breathe through a nonporous outer skin when gripped by a driver was a result both "unusual and surprising" in the steering wheel cover art.

34. Defendant finally contended the patent in suit to be invalid under the provisions under 35 U.S.C. 112 on the basis that the claims of the patent in suit define the steering wheel cover core as being a "porous" foamed material. The word "porous", according to defendant, standing alone, is indefinite as not meeting the second paragraph of 35 U.S.C. 112. The specification of the patent in suit, however, clearly describes the porousity [sic] of the core as being adequate to permit air to be forced in and out of such cellular foam through the perforations when the operator grips the steering wheel to permit the cover to breathe internally and to permit the production of a pumping action

Appellant also contends that the district court erred in finding the Meier product claims valid when in fact Meier used an old material which was patentable only as a process under 35 U.S.C. § 100(b) and § 101.

■ We are convinced that the trial court's findings and conclusions on obviousness are clearly erroneous under the standard of review for a § 103 case. *Saf-Gard Products, Inc. v. Service Parts, Inc.*, 532 F.2d 1266 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976). The judgment of the district court is reversed and the Meier patent is found to be invalid and not infringed.

The Meier patent consists of the following:

1) A nonporous inner skin (next to the steering wheel);

2) A porous foam core; and

3) A nonporous outer skin,

processed together in a unitary band of synthetic plastic in which the core is the same material as the skins. There are a multiplicity of perforations going through the entire band, and the band is held on to the steering wheel by a narrow tie cord

wound helically around the band. Kamei markets a steering wheel cover which is made substantially in accord with the patent[3] under the trade name "AVUS." Kamei contends that what makes their steering wheel cover unique is that, as a result of the perforations going through the materials, it "breathes" thereby eliminating perspiration of the drivers' hands. Kamei also claims that, unlike other covers, the AVUS does not become sticky or have an unpleasant odor after extended periods of use.

■ Kamei was apparently so confident of the uniqueness of their patent that they failed to cite a single prior art reference to the patent examiner. A patent is presumed valid under 35 U.S.C. § 282 unless there is a showing that prior art was not brought to the attention of the patent examiners. *Deere & Co. v. Sperry Rand Corp.*, 513 F.2d 1131 (9th Cir.), *cert. denied*, 423 U.S. 914, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975); *Hewlett-Packard Co. v. Tel-Design, Inc.*, 460 F.2d 625 (9th Cir. 1972). Therefore, there is no presumption of validity here. The district court did consider the prior art in both its memorandum opinion and findings of fact and conclusions of law;

which eliminates any possibility of stagnation within the cells of the core (Ex. 1, Column 3, lines 50–61).

Conclusion of Law No. 12 is as follows:

12. With respect to 35 U.S.C. 103, applying the requirement of an "unusual or surprising result" as a basis for nonobviousness as directed in the case of *Hewlett-Packard Co. v. Tel-Design, Inc.*, 460 F.2d 625 (9th Cir. 1972), the court concludes that plaintiffs have established that the ability of the patented steering wheel cover to breathe through the perforations thereof when gripped by a driver to thereby substantially eliminate the buildup of perspiration on such cover was an unusual or surprising result in the steering wheel art. Accordingly, the court concludes that Claims 1–6 and 8 of the patent in suit comply with the unusual or surprising result basis of nonobviousness of .35 U.S.C. 103.

3. Mr. Comstock, a Los Angeles patent attorney who was a witness for plaintiffs, testified that plaintiffs' covers were manufactured in accordance with all claims of the patent except Claim 7 ·which provides for winding the tie band helically around the steering wheel crown. The trial court did not consider Claim 7 since it concluded it was not at issue. There was also

testimony from R. Nass, a defense witness with expertise in polyvinyl chloride technology, that the description in the patent for making the foam core and skins did not conform to general commercial practices and "that were I to attempt to follow this as precisely worded in this [patent] description, it would be impossible to make a product." T. III, p. 380, l. 14–16. Furthermore, an employee of Freudenberg, the company who manufactures the material for Kamei's covers, admitted that they produce the material by a countercoating process, not a calendaring process as called for in the patent. The difference between the two appears to be whether the gelation of the skin and fusion of the foam occur simultaneously (as in countercoating), or whether the initial skin is formed separately from the foam (as in calendaring). It should also be noted that the testimony raised some question as to whether the calendaring process could produce a substantially open cell (porous) foam. Mr. Nass testified that he did not think a porous foam could be made by calendaring, and Freudenberg's employee testified he did not know of anyone who made a porous foam by the calendaring process.

it found that the patent in question was not obvious. However, we note the memorandum opinion closely follows the findings of fact and conclusions of law which were prepared by appellees and adopted virtually unchanged. We have previously stated:

> While it may be permissible for a judge to adopt findings proposed by a counsel in complex patent cases, . . . an appellate court will scrutinize them more carefully than findings which are the product of the judge's own independent thought and research.

*Burgess & Associates, Inc. v. Klingensmith*, 487 F.2d 321, 324–25 (9th Cir. 1973) (citations omitted). A review of the findings on

4. Conclusions of Law Nos. 9, 10, and 11 were directed toward the obviousness issue. They provide:

> 9. This court has carefully considered the applicability of the "nonobviousness" test set forth in 35 U.S.C. 103 as directed by the Supreme Court in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966):
>
> [T]he § 103 conditions, which is but one of the three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art 111 and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.
>
> 383 U.S. 1 at 17–18, 86 S.Ct. 684, at 694, 15 L.Ed.2d 545 (1966); see also *Reeves Instrument Corp. v. Beckman Instruments, Inc.*, 444 F.2d 263 (9th Cir. 1971), *cert. denied*, 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268 (1971).
>
> 10. In testing Claims 1–6 and 8 of the patent in suit for nonobviousness, the court has carefully examined the scope and the content of the prior art, the differences between the prior art and the claims at issue and the level of ordinary skill in the steering wheel art. The evidence shows that others skilled in the steering wheel cover art (including Karl Meier, one of the coinventors of the patent in suit) had been unable to develop a single cover that provided a satisfactory solution to the collective problems inherent to prior art steering wheel covers, namely,

obviousness in this case [4] shows emphasis on secondary considerations such as long felt need, commercial success, solution of earlier steering wheel cover problems and acceptance of a sub-licensing agreement by Sterling Products Company, Inc., which had previously been in competition with Superior. However, those factors are not controlling where there is a lack of invention, *Hewlett-Packard Co. v. Tel-Design, Inc., supra*, at 630–31, and obviousness is clear, *Walker v. General Motors Corp.*, 362 F.2d 56 (9th Cir. 1966).

In considering obviousness:

the scope and content of the prior art are to be determined; differences between

> the formation of perspiration resulting in stickiness and unpleasant odors, an uncomfortable feel, failure to remain securely attached to the steering wheel and breaking down after use. The patented steering wheel cover not only provided a satisfactory solution to these problems, but it did so at a low cost of production. The inventors were successful because they discovered the critical importance of providing a steering wheel cover of integral construction utilizing a porous core sandwiched between a pair of nonporous skins having throughgoing perforations to permit the cover to breathe when gripped by the driver. The failure of those skilled in the steering wheel cover art at the level of skill existing at the time the invention of the patent in suit was made to solve the aforementioned problem is a weighty indication that the patented discovery was not obvious. See *Reeves Instrument Corp. v. Beckman Instruments, Inc.*, 444 F.2d 263 (9th Cir.) *cert. denied*, 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268 (1971); *Neff Instrument Corp. v. Cohu Electronics, Inc.*, 298 F.2d 82 (9th Cir. 1961); *Cool-Fin Electronics Corp. v. International Electronic Research Corp.*, 491 F.2d 660 (9th Cir. 1974).
>
> 11. Certain secondary considerations as set forth in *Graham v. John Deere Co.*, 383 U.S. 1 at 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545, support this court's conclusion of nonobviousness. The patented steering wheel cover fulfilled a long-felt need. It was an undoubted and immediate commercial success. See *Cool-Fin Electronics Corp. v. International Electronic Research Corp., supra*. The initial skepticism with which the patented cover was received indicates nonobviousness, as does the recognition accorded such cover by the trade, including the licensee, Superior Industries, Inc. and the latter's sub-licensee, Sterling Products Company, Inc.

the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1965).

■ In reviewing the scope of the prior art, we find a variety of devices [5] that have been made along the same lines as the Meier patent. Mr. Alfons Wassmeier, a defense witness, who is a German patent attorney, described Exhibits P1 and P2 as a pad for car seats which has a porous foam core and integral nonporous skin and throughgoing perforations. Exhibits T1 and T2, a French patent, was also described by Mr. Wassmeier as an automobile seat with "a porous foamed material as a core, covered with a nonporous skin" and throughgoing perforations. T II, p. 221, l. 4–5. The object of both devices seems to be eliminating stickiness or perspiration. The district court dismissed these various devices because "all of the same elements of such patent claims are not found in exactly the same situation and united in the same way to perform an identical function" as required for the defense of anticipation. Conclusion of Law No. 8. Appellant has not challenged the district court's finding there was no anticipation of the Meier patent. However, as was pointed out in *Walker, supra* (also cited by the district court), anticipation is strictly a technical defense. Just because a patent was not anticipated by prior art does not mean it would not have been obvious in light of prior art. *See Walker, supra*. While the foregoing seat covers are not decisive of this case, we believe they are similar enough in their elements or functions that they could be considered within the scope of the prior art on the issue of obviousness.[6] The district court apparently accorded them little, if any, weight on that issue.

■ There were also steering wheel covers which had incorporated many of the elements relied upon by the Meier patent. German Utility Model No. 1,681,102 (the Lupke patent) had an inner porous foam core with a synthetic outer cover and perforations in the outer cover. There are slight differences between Lupke and Meier: Lupke does not have an inner skin, it is unclear that Lupke's synthetic cover was to be of nonporous nature, and Lupke's perforations are not throughgoing. Yet we think it is clear that the object of the Lupke patent was to absorb moisture and maintain a dry wheel surface. The district court did not mention Lupke in its references to prior art. We believe that it is too relevant to be ignored. No evidence was introduced in the trial as to Lupke's performance in use. German Utility Model No. 1,901,944 (a prior Meier patent), called for construction similar to the Lupke patent; a two layer band consisting of an inner porous foam sheet with a thin synthetic plastic outer skin and perforations through the skin. Kamei marketed a cover called the SPORT under this patent starting in mid-1964.[7] The SPORT experienced a high rate of returns from dissatisfied customers in that it became sticky and had an unpleasant odor from perspiration and the foam next to the steering wheel shifted and tore underneath the cover. Essentially, the Meier patent solved these problems by placing a tough nonporous inner skin next to the wheel so the

---

5. The products ranged all the way from a handball mitt with a porous foam core and nonporous skin with perforations to shoe soles, pram handles and steering wheels with holes.

6. *See Aerotec Industries of Calif. v. Pacific Scientific Co.*, 381 F.2d 795 (9th Cir. 1967) where such diverse products as a device to prevent a cow from kicking over the milk bucket while she is being milked and a trolley catcher were prior art for a safety device used with body harnesses in planes or cars to restrain passengers' body movements in the event of violent motion.

7. It appears that the SPORT may not have actually had a porous core, or else the Meiers would not have approached Freudenberg about developing a material "with open cells and good feeling and which must be perforated." T. IV, p. 478, l. 2–3. We do not feel that it invalidates the patent as prior art, simply because the product may not have been made in accord with the patent. This may have also been a factor in the problems the SPORT encountered in use.

foam would not tear, and by making the perforations go all the way through the foam and inner skin "to permit the cover to breathe."[8] The question becomes whether these changes would have been obvious in light of the level of skill in the art. We believe they would have.

It would seem obvious that one could strengthen the foam by making a tough inner skin through the process of either calendaring or reverse roll coating.[9] It appears that the level of skill in either process is fairly high, and that anyone familiar with making polyvinyl chlorides would be aware of both processes. An example of this level of skill is demonstrated by the fact the Meier patent did not clearly describe how the foam core was to be made in the calendaring process. Mr. Nass testified:

> If I were making it myself, I would know immediately from reading this that this could not be carried out, and I would look for other ways.

THE COURT: Would you know what to do?

THE WITNESS: Yes, I would.

THE COURT: Would anyone learned in the art know what to do?

THE WITNESS: Yes, they would; and certainly prior to the date of this patent.

T. III. p. 383, l. 14–22. U. S. Patent No. 2,964,799, issued December 20, 1960, discloses a method of making plastic foam laminates. Plaintiffs' counsel at one point acknowledged that the "material has been around for years, but nobody had enough sense to make it into a wheel cover." T. III, p. 414, l. 2–3. U. S. Patent No. 2,748,-863 was issued June 5, 1956 and pertains to a perforating machine for thermoplastic films. Obviously, work in this area had been done in the United States long before Freudenberg started experimenting in Germany to produce a new material for Kamei.

■ Where a combination patent combines old elements, there is a requirement that the patent produce an unusual or surprising result in order to be nonobvious. *Hewlett-Packard Co. v. Tel-Design, Inc., supra; Regimbal v. Scymansky*, 444 F.2d 333 (9th Cir. 1971). The trial court found this

---

**8.** Conclusion of Law 10 provides in part:

The inventors were successful because they discovered the critical importance of providing a steering wheel cover of integral construction utilizing a porous core sandwiched between a pair of nonporous skins having throughgoing perforations to permit the cover to breathe when gripped by the driver. However, there was testimony at trial that it made no difference whether the perforations were throughgoing as to the amount of air expelled as long as the core were open cell. Mr. Nass testified for defendant on direct examination:

A. If I understand your question correctly, you are asking me if the amount of air that could be expelled on compression would be the same whether or not the perforations of the surface skin went all the way through the foam or reached down only partially into the foam?

Q. Right, that's correct.

A. Assuming that the foam is essential or wholly porous?

Q. Wholly porous.

A. Or open-cell construction.

Then my answer is that it would be relatively immaterial whether the holes went all the way through or not, because there would still be interconnection or channelling of cells, so that all the cells theoretically would

be connected in one way or another to the holes.

T. III, p. 358, l. 3–17.

It appears that throughgoing perforations would become more important in foam that was not wholly porous, because the mere cutting of holes through the foam would convert some closed cells into open ones. Dr. Feldhaber, a witness for plaintiffs, who is employed by Freudenberg (the company which produces the material for Kamei's covers) admitted on cross-examination that if you have a 95% closed cell structure and a customer wants 65%, you could convert it to a partially open structure by making fine needle punctures. While the patent calls for a porous core, the porosity of Kamei's covers was in substantial dispute. Witnesses for both plaintiffs and defendant agreed that a porous foam would be 65–75% open cell. Dr. Feldhaber testified that the material produced for Kamei was 65% open cell. Mr. Nass testified that you could not make it Freudenberg's way and achieve a 65% open cell structure, and that the percent of open cells would not be greater than 55% or 60%. Thus, the throughgoing perforations may be an essential feature of Kamei's patent only because the foam is not originally 65% porous.

**9.** See Note 2 for a simplified explanation of the differences between these two processes.

cover to be an invention because of its unusual and surprising ability to breathe. There was a substantial conflict at trial regarding whether the covers as manufactured actually breathe, and if so, how much; Eurasian urges on appeal that they absorb rather than breathe. We believe that whether the patented covers breathe or absorb, and whether the foam is 65% or 55% open cell, the covers perform in the manner one would expect, given the prior art. Granted they may have a higher degree of efficiency than the prior art, but merely making a foam core with a higher degree of open cells or making an inner skin to prevent tearing and shifting of the foam are minor refinements which produce no surprising results. What we have here is:

> an improved product but not an innovatively different one. . . . [W]e see the development and refinement of an old concept . . . but not an inventive or new approach to the problem.

*Rex Chainbelt Inc. v. Harco Products, Inc.,* 512 F.2d 993, 1000 (9th Cir.), *cert. denied,* 423 U.S. 831, 96 S.Ct. 52, 46 L.Ed.2d 49 (1975). *See also Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976).

The judgment holding U. S. Patent No. 3,312,124 valid and infringed is reversed. In view of the above, the district court's cost order awarding costs to the appellees is hereby vacated and we remand to the district court for a result consistent with this opinion.

*On Petition for Rehearing*

ORDER

Appellees' claim that we entirely overlooked *Cataphote Corp. v. De Soto Chemical Coatings, Inc.,* 356 F.2d 24, 26 (9th Cir. 1966), is groundless. Here, as distinguished from *Cataphote,* we have a definite and firm conviction that a mistake was committed by the trial judge. Consequently, his findings were clearly erroneous. Headnote one of our opinion makes this clear.

The Petition for Rehearing is denied.