RENFREW, District Judge,
dissenting:
This case presents some of the difficult problems raised when overworked trial judges adopt without change the findings of fact and conclusions of law prepared by a prevailing party. This Court has in the past disapproved of this practice, as have many others. E. g., Industrial Building Ma *575 terials, Inc. v. Interchemical Corp., 437 F.2d 1336, 1339-1340 (9 Cir. 1970); see also State of Fla., etc. v. Charley Toppino & Sons, Inc., 514 F.2d 700, 703 (5 Cir. 1975); Kelson v. United States, 503 F.2d 1291, 1294-1295 (10 Cir. 1974); Roberts v. Ross, 344 F.2d 747, 751 — 752 (3 Cir. 1965). Although such findings will stand if supported by the evidence, they present special problems for a reviewing court. See United States v. El Paso Natural Gas Co., 376 U.S. 651, 656-657 & n.4, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964). Even in complex patent cases, where the permissibility of adopting findings prepared by counsel has generally been recognized, this Court has stated that “ ‘an appellate court will scrutinize [such findings] more carefully than findings which are the product of the judge’s own independent thought and research.’ ” Kamei-Autokomfort v. Eurasian Automotive Products, 553 F.2d 603, 606 (9 Cir.), cert. denied, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977), quoting Burgess & Associates, Inc. v. Klingensmith, 487 F.2d 321, 324-325 (9 Cir. 1973) (citation omitted).
In this case, the findings stray so far from revealing “the discerning line for decision of the basic issue in the case,” United States v. El Paso Natural Gas Co., supra, 376 U.S. at 657, 84 S.Ct. at 1047, that I must respectfully dissent. The crucial problem is that the findings of fact on the two key questions in the case do not deal directly with the relevant issues of ultimate fact, and, on the points they do address, are directly contradictory.
Thus, on the issue of whether either party knew or had reason to know of the other’s interpretation of the contract regarding progress payments, we have only Findings of Fact # 7 and # 9, which read as follows:
“7. That prior to the signing of the subcontract, UBM showed H & H its proposed costs. Mr. Kranz of UBM indicated at this time that he expected progress payments would be made under the contract.”
“9. That H & H did not know of Plaintiff’s expectation of progress payments at the time of the signing of the subcontract and did not intend to pay progress payments.”
The direct contradiction in these findings makes any attempt to discern the basis of decision on this point highly speculative. The greatest difficulty, however, is that even if the findings can be reconciled, they do not address the real issue here. There has never been any dispute that progress payments were required under the subcontract. Subcontract Agreement Article XXX. Indeed, to the extent that Finding of Fact # 9 states that H & H intended to disregard this express contractual obligation, it is without support in the evidence and clearly erroneous. The only issue is whether payments made for materials delivered but not yet installed were to include a portion of the total overhead and profit for the job. Findings of Fact # 7 and # 9 deal only with expectations that progress payments would be made. They cannot assist us in determining what the district court concluded as to the parties’ understanding on the more specific point which is at issue in the case, or what facts may have led him to that conclusion.
On the other major issue — the effect of trade usage — the problems are equally serious. No finding deals with the understanding in the trade regarding payment for materials delivered but not yet installed. The only potentially relevant finding is Finding of Fact # 10, which reads as follows:
“10. That the terms of payment for materials delivered but not installed under the sub-contract provide that payment for materials is made at the invoice price less 10% retention. In the trade everyone recognizes that ‘invoice’ means the manufacturer’s price to the sub-contractor. UBM was not in the trade and UBM thought invoice meant its price to H & H. Neither of the parties was using the word ‘invoice’ in the same meaning as the other party.”
This finding is clearly erroneous at the outset, since neither the subcontract agreement nor the supporting contract docu *576 ments use the word “invoice” in this connection. The record indicates that “invoice” in this sense appears only in a series of letters exchanged by the parties more than a month after the agreement was signed, and in information allegedly given to Mr. Kranz orally by an H & H employee, also after the agreement was signed. There is no finding that either the letters or the conversations effected a modification in the subcontract to include any reference to or understanding of the word “invoice”.
Although there appears to be evidence supporting the conclusion that the trade practice in government contracting situations was that payments for materials would be made at the rate of manufacturer’s invoice less 10% retention regardless of the express terms of the contract, the district court made no such finding. Even if this Court were to supply it, the findings are in a state of confusion as to UBM’s status in the trade — a fact which is crucial to the determination of whether UBM can reasonably be charged with notice of the trade usage in question. The district court found both that UBM was “not in the trade”, Finding of Fact # 10, and that UBM was a “brand-new comer [sic] into the field of carpent [sic] subcontracting and bidding on government jobs.” Finding of Fact # 6. If UBM was in fact not in the trade at all, it could not be charged with knowledge of trade usage unless that usage was known in the community outside the trade. Cf. Frigaliment Importing Co. v. B.N.S. International Sales Corp., 190 F.Supp. 116, 119 (S.D.N.Y.1960) (New York law). There is no finding on this point. On the other hand, if UBM held itself out as engaging in the trade, even as a newcomer, it may well be reasonable to charge it with a duty to ascertain customs universally known in the trade. In these circumstances, those parties with whom UBM contracted would be entitled to rely on the assumption that UBM understood such customs. Because of the vast difference between these two conclusions, the direct contradiction on this point again suggests that any attempt to discern the actual basis for decision here must be conjectural.
Although I deplore the delay and expense necessitated by a remand in this case, I am convinced that the findings of fact and conclusions of law do not enable this Court to determine the grounds or the factual predicates on which the district court based its decision and thus cannot provide the necessary basis for review. Alpha Distrib. Co. of Cal., Inc. v. Jack Daniel Distillery, 454 F.2d 442, 453 (9 Cir. 1972); Roberts v. Ross, supra, 344 F.2d at 751. On the two major issues in the case, the findings are internally contradictory and, even if reconciled, fail to address the relevant facts. I recognize that an appellate court is permitted to make its own findings in an appropriate case. Alpha Distrib. Co. of Cal., Inc. v. Jack Daniel Distillery, supra, 454 F.2d at 453; Oil, Chemical and Atomic Workers Intern. Union v. N.L.R.B., 178 U.S.App.D.C. 301, 307, 547 F.2d 575, 581 (1976), cert. denied, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). But I am unable to find the record so clear that a full understanding of the issues can be reached without the aid of findings by the court below. Nor can these two issues be ignored, and the interpretation of the contract be based solely on course of performance and construction against the drafting party. Those subsidiary aids to interpretation must ordinarily yield to the more direct evidence of intent available in this record.
Because I am convinced that an affirmance in this case requires this Court to weigh conflicting evidence and to reach its own findings of fact in the guise of reconciliation and construction, I would vacate the judgment and remand the cause to the district court for reconsideration of the entire record and preparation of supplemental findings of fact and conclusions of law.[1]

. It is worth noting that such action has not always resulted in purely formalistic and insubstantial changes in findings on remand. In Roberts v. Ross, supra, 344 F.2d 747, the district court reversed its former decision after reconsideration of the record, and held on remand for the party against whom it had held initially. See C. Wright & A. Miller, Federal *577 Practice and Procedure § 2578, at 706 n.16 (1971).