GARTER–BARE COMPANY, an Unincorporated Association (a limited partnership), and Knut L. Bjorn-Larsen, Plaintiffs-Appellants,

v.

MUNSINGWEAR, INC., a corporation, et al., Defendants-Appellees.

No. 75–3826.

United States Court of Appeals, Ninth Circuit.

April 17, 1980.

As Amended on Denial of Rehearing June 5, 1980. (Appellants.)

Rehearing Denied July 17, 1980. (Appellees.)

Robert W. Driscoll, John E. Wagner, Lillian Tomich, San Marino, Cal., for plaintiffs-appellants.

Robert T. Edell, Minneapolis, Minn., argued; for defendants-appellees; Gregory L. Roth, Minneapolis, Minn., on brief.

Before CHAMBERS, ELY and WALLACE, Circuit Judges.

CHAMBERS, Circuit Judge:

In 1963 appellant Bjorn-Larsen applied for, and in 1966 he was granted, a patent for a "double layer" method of constructing ladies' girdles so as to eliminate the necessity for metal or other garters (Patent No. 3,253,599—hereinafter No. '599). His device had a double layer of fabric on the leg of the garment, with friction elements placed in the interior. When the stocking top was inserted into this fabric enclosure, the friction element closed in to support it.

In 1965 Garter-Bare, the limited partnership of which Larsen was the general partner, entered into a written agreement with appellee Munsingwear under which they were to "develop and share in the commercial application of a certain device for supporting ladies hosiery." Garter-Bare warranted that it was the sole owner of the device and that it was properly protected by "appropriate patents and/or patents pending." A three-stage commercial application program of research and development and licensing was agreed to. All improvements and developments of the device, or the ideas for its application and use, were to be shared by the parties.

In January 1967, Larsen applied for a patent for a single layer device, which eliminated the necessity for the double layer of fabric and operated by the pressure of the friction element against the stocking and the bare leg. (In November 1969, this application matured into Patent No. 3,478,748 —hereinafter No. '748). In December 1967,

Munsingwear notified appellants that it did not wish to "renew the Agreement", purportedly because the device had not shown promise of being marketable. But in February 1969, appellee Munsingwear (through an employee named Cuozzi) applied for a patent for a single-layer style girdle bearing a remarkable resemblance to the style covered by appellant Larsen's No. '748 application. (The Cuozzi patent matured in February 1970 into No. 3,496,944—hereinafter No. '944.)

This action was filed in district court in January 1972. The amended complaint is in eleven claims alleging breach of written, oral and implied contract, fraud and conspiracy to defraud, misappropriation, patent infringement, and other violations of appellants' rights. Jury trial was demanded. Munsingwear answered with denials and with affirmative defenses, as to the '748 patent, of lack of invention, anticipation by other devices in the alleged prior art; it also sought a declaration of the invalidity of the '748 patent, by means of a counterclaim. Extensive discovery was undertaken and Munsingwear then filed its motion for summary judgment under Rule 56, F.R.Civ.P. The district court adopted appellee's proposed findings of fact and conclusions of law, dismissed all eleven claims, and on the counterclaim declared the '748 patent invalid. This appeal followed. Appellants raise issues related to the legal interpretation of the written agreement and they contend that there are issues of fact that precluded summary judgment. We discuss the contract issues first.

*The Breach of Contract Claims*

█ The 1965 agreement between the parties (prior to amendment) described the commercial application program in three phases. There was a six-month period of research and development terminating in December 1965, followed by a two-year period during which Munsingwear would have an exclusive license, followed by a period of non-exclusive license during which the parties would cooperate in obtaining industry-wide use of the product. As the agreement is drafted, each phase followed immediately

on the termination of the preceding phase. Nothing in the agreement, as executed, contained provisions giving either party a right to terminate it. However, executed contemporaneously with the basic agreement was a First Amendment which states that Munsingwear (whose termination rights are here relevant) might cancel the agreement "upon 90 days prior written notice to the licensor Garter-Bare; however, any and all royalties due and accruing to Garter-Bare at the cancellation date shall be paid within 30 days after cancellation."

The basic agreement was thereafter amended twice more. The Second Amendment, signed on December 19, 1966, extended the research and development phase until July 1, 1967. The Third Amendment, signed July 31, 1967, extended it to January 1, 1968. In both amendments the extension was for approximately six months unless Munsingwear "elects to exercise their rights to the exclusive license" at some earlier date. As consideration for the extensions, Munsingwear agreed to pay Garter-Bare monthly,

". . . as royalty-advance-payments on the first day of each month . . . continuing until royalties paid to Garter-Bare Company under said Agreement total One Thousand Dollars ($1,000.00) per month or more, *or said Agreement is terminated as provided for therein.*" (Emphasis supplied.)

On December 22, 1967, just a few days before the expiration of the last extension, Munsingwear sent the following notice to appellants:

"This is to advise you that Munsingwear, Inc. does not wish to renew the Agreement dated July 9, 1965, which has been amended from time to time, the last Amendment being July 31, 1967.

"Mr. Nat Grossman will be contacting you in the very near future relating to our decision on the Garter-Bare Device."

By letter dated January 2, 1968, an attorney for Garter-Bare wrote to Munsingwear expressing regret that Munsingwear did not wish to "renew the Agreement", and stating Garter-Bare's position that 90 days pri-

or written notice was required for cancellation and that $3,000 (i. e. the amount that would accrue in the 90 days following the December 22 notice) was due within 30 days as provided for in the agreement.

On January 17, 1968, the Garter-Bare attorney wrote acknowledging Munsingwear's "cancellation" and asking again what Munsingwear intended to do to "complete the agreement" in the light of the 90-day cancellation clause and the requirement of paying the $1000 monthly advance-royalties. He quoted from the Third Amendment's provision that the monthly payment of $1000 would be paid until actual royalties totalled that amount or more "or said Agreement is terminated as provided for therein." He stated, "it would appear that Garter-Bare is entitled to receive $3,000 from Munsingwear within 30 days after cancellation." Using December 22 as the date of notice of cancellation, and adding 30 days, he set the date for payment as January 22, 1968.

On January 18, 1968, a letter from Munsingwear acknowledged the existence of the provision for 90 days prior notice but then stated that "it applied to the original agreement and provided a cancellation period, assuming that royalties would have been earned and due Mr. Larsen." The letter states that as no royalties were due and owing there was no requirement for further payment of the monthly $1000 sums. Additional correspondence of the parties in the succeeding months merely restated these same interpretations of the agreement.

The district court's conclusions of law recite that there can be no recovery under the first and second claims because they are "predicated on the continuing nature" of the July 9, 1965, written agreement, and because that agreement "was terminated by a notice of termination sent by Munsingwear on December 22, 1967, and both Munsingwear and Garter-Bare specifically understood that Munsingwear intended to and had cancelled the agreement."

We cannot agree with these conclusions of law. The notice sent on December 22,

1967, did not comply with the explicit requirements for which the parties bargained. It did not give 90 days notice unless it were interpreted as going into effect 90 days thereafter, on March 21, 1968. Munsingwear consistently rejected such an interpretation when it was suggested by Garter-Bare. Instead it appears to have relied on 1) an assumed right to terminate the entire contract merely by electing not to extend the research and development period, and 2) an assumed right to dispense with the monthly payments called for in the extension amendment simply because the research and development extension was to be terminated. The contract and its amendments cannot fairly be read to permit these interpretations. The termination of the research and development phase merely set in progress the phase during which Munsingwear was to have an exclusive license. Termination of the entire agreement was required to be in the manner spelled out—i. e. 90 days prior written notice. And the $1000 monthly payments called for in the amendment continued until such termination was effected. We cannot read the amendment as assuring the monthly payments only during the life of the extension of the research and development period.

The district court's conclusion that the parties had an "understanding" that the agreement had been cancelled cannot be sustained on summary judgment. We may surmise that Garter-Bare was aware that Munsingwear intended not to proceed with development and merchandising of the device. But Garter-Bare's acknowledgement of this intent should not be equated, as a matter of law on summary judgment, with any acknowledgement on its part that Munsingwear had effectively cancelled the contract. Any claim that appellants waived their contract rights (as to the nature of the termination) raises fact issues that are in dispute and cannot be disposed of so summarily.[1] Thus, correspondence to parties or to other potential patent licensees, reciting

1. See *infra* for fuller discussion of the rules applicable to summary judgment.

that Munsingwear had "cancelled", should not on summary judgment be considered an acknowledgement or admission by Garter-Bare that Munsingwear had a *right* to cancel in this manner without giving the notice required by the agreement.

The district court, while proceeding on the assumption that the contract had been terminated, never stated when the termination took place. Such a determination will have to be made. We express no view here as to the date of the termination, if indeed there was one.

The third claim was also based on the written agreement, and claimed a right to the monthly $1000 payments. The district court held that this claim did not state a claim upon which relief can be granted. In view of what we have said above, if it was thinking that the claim was barred by Section 337(1) of the California Code of Civil Procedure, we disagree. The statute of limitations for breach of a written agreement would not have started to run until the first payment was due and was not paid. The very earliest that would have been was thirty days after December 22, 1967—assuming that the letter of that date is in some way considered as proper notice to terminate the contract. The action was filed within 4 years of that date, and was therefore not barred.

Appellee also contends that Garter-Bare pleaded that such payments were only due during the Research and Development phase and that it was uncontradicted that that phase ended on December 31, 1967— and equally uncontradicted that Munsingwear had paid the monthly amounts through that date. Appellant claims that the research and development phase had been extended (despite the December 22 notice) because of the custom and conduct of the parties. Too many fact issues surround this contention for it to have been disposed of summarily.

The fourth claim also relies on the existence of the written contract, more particularly its provision that "All improvements or developments of the device or the ideas for its application and use, will belong to Garter-Bare Company and Munsingwear, Inc., jointly. Garter-Bare and Munsingwear will secure the necessary releases from their employees to insure this result." Appellant claims an interest in the so-called Cuozzi patent (No. '944), on the basis that it is an improvement subject to the terms of the agreement. Here again, the district court proceeded on the assumption that the agreement was terminated and that there could be no relief on this claim. As discussed above, this is as yet a false assumption. The district court also found that Ms. Cuozzi began her employment at Munsingwear about May 1967 and began to develop styles 888 and 988 (the Munsingwear single layer girdles) about June 1968. But as we discussed earlier, we do not as yet know when, if ever, the agreement terminated. Moreover, the district court's finding that the Cuozzi patent did not involve Larsen improvements, finds questionable support in the record. Appellee refers us to the response to Interrogatory No. 136, but this single reference is hardly acceptable to establish that there are no genuine issues as to any material fact relating to this problem.

We turn now to the remaining claims that raise issues based on claims of fraud, violation of appellants' rights under their patents, etc. Here the use of summary judgment to dispose of the litigation raises serious problems.

*Existence of Fact Issues on Summary Judgment*

Under Rule 56, F.R.Civ.P., summary judgment may be ordered in those situations where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Where, as here, the plaintiffs had demanded trial by jury, summary judgment would be proper only if as a matter of law there were no genuine issues of fact to present to a jury. It is not a device to be employed to dispose of litigation simply because it appears that the plaintiff may have a weak case.

In this case the district judge was bombarded by a mass of affidavits, answers to interrogatories, depositions, and miscellaneous documents, in support of appellee's motion for summary judgment. In the end the district judge granted summary judgment and adopted verbatim the 131 findings of fact and 50 conclusions of law as drafted by the appellee.[2] Not surprisingly appellee now invites this Court's attention to those findings of fact and, in a 45 page "Appendix" to its brief, attempts—fact by fact—to destroy plaintiffs' case.

██ We are obliged to comment that if findings of fact are employed in summary judgment cases, just as in other types of cases they are most helpful to us when they reflect the trial judge's "independent judicial labors and study" and are not merely "the mechanical adoption of the successful attorney's 'suggested' findings." *Edward Valves, Inc. v. Cameron Iron Works, Inc.,* 289 F.2d 355 (5th Cir. 1961); *Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,* 259 F.2d 398, 401 (5th Cir. 1958); *United States v. Forness,* 125 F.2d 928, 942 (2nd Cir. 1942).

In *Industrial Bldg. Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336, 1339 (9th Cir. 1970), this Court expressed its approval of the statements in *United States v. Forness, supra,* as to the nature and purpose of findings of fact and conclusions of law under Rule 41 and Rule 52, F.R.Civ.P. We find the statements equally applicable in this Rule 56 appeal. Findings that are mechanically adopted by the district court do not serve the primary end that they were intended to serve, i. e. "evoking care on the part of the trial judge in ascertaining the facts." The far better practice is for the trial judge to prepare his own findings with appropriate help from counsel's proposed findings. "Those drawn with the insight of a disinterested mind are  .  .  .  more helpful to the appellate court". *United*

*States v. El Paso Natural Gas Co.,* 376 U.S. 651, 656–657, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964).

This Court has recognized that it is permissible after trial for the trial judge to adopt findings proposed by counsel in complex patent cases, but when this is done:

> "  .  .  .  an appellate court will scrutinize them more carefully than findings which are the product of the judge's own independent thought and research."

*Burgess & Associates, Inc. v. Klingensmith,* 487 F.2d 321, 325 (9th Cir. 1973); *Kamei-Autokomfort v. Eurasian Automotive Products,* 553 F.2d 603, 606 (9th Cir. 1977). We may comment that this statement applies with even greater force when the findings are ones drawn by counsel not after trial but to justify summary judgment.

With this in mind, we have scrutinized the findings in this case, employing the same standard as that binding on the trial court in summary judgment cases, i. e. whether the moving party is entitled to prevail as a matter of law. *Zweig v. Hearst Corp.,* 594 F.2d 1261, 1264 (9th Cir. 1979). In doing so we have viewed the evidence and inferences that may be drawn therefrom in a light most favorable to the appellants, who opposed the motion for summary judgment below. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59, 63 (9th Cir. 1973). "If under any reasonable construction of the evidence and any acceptable theory of law, one would be entitled to prevail, the summary judgment against him cannot be sustained." *Industrial Bldg. Materials, Inc. v. Interchemical Corp., supra,* at 1340. As we discuss below, we conclude that it cannot be sustained in this case.[3]

*Claims Based on Fraud·*

██ Appellants' fifth and sixth claims assert that there was a confidential relation-

---

**2.** Local Rule 3(g) of the United States District Court for the Central District of California provides that the party submitting a motion for summary judgment submit proposed findings of fact and conclusions of law "as to which the moving party contends there is no genuine issue."

**3.** In the discussion that follows we make no attempt to sort out all issues which are, or are not, genuine issues of material fact. We are not inclined, as an appellate court, to attempt this on this record.

ship between the parties and that Munsingwear violated it by misrepresenting that the Garter-Bare device was not promising in terms of marketability, knowing that Munsingwear intended to market it under the so-called Cuozzi patent. These issues do not lend themselves to summary judgment. Fraud claims normally are so larded with fact issues (including issues as to intent) that summary judgment is seldom possible. *Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259, 1262 (D.C.Cir.1972); *Clyde v. Hodge*, 413 F.2d 48 (3rd Cir. 1969). There is no need here to dwell on the well-established rule that the trial judge cannot weigh evidence or judge the credibility of witnesses. *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341 (9th Cir. 1978).

It is not surprising that appellee considered it necessary to propose 42 findings of fact as to these two claims in an attempt to demonstrate that no genuine issue of material fact remained. On appeal, Munsingwear attempts to justify summary judgment as to these issues by referring us to certain answers to interrogatories, or statements in affidavits, or pages of depositions, or miscellaneous documents. But giving the appellants the benefit of all doubts and inferences, as we no less than the district judge are bound to do, we cannot hold that this fact by fact, piecemeal trial of the case on summary judgment was sufficient. See *Cameron v. Vancouver Plywood Corp.*, 266 F.2d 535 (9th Cir. 1959).

■ Appellee asserts that the fifth and sixth claims are barred by the statute of frauds. But under California law the application of the statute of frauds raises fact issues that must be determined by the jury unless only one inference can be drawn from the evidence. *Caplan v. Roberts*, 506 F.2d 1039, 1042 (9th Cir. 1974). We cannot say that there was only one inference in this case.

■ In the same vein, we cannot agree with the district court's conclusion of law

that the claims are barred by the California statute of limitations for fraud, Section 338(4), California Code of Civil Procedure. The test is when a reasonably prudent person would have had such knowledge as to put him on inquiry, so as to commence the running of that statute of limitations. *Hobart v. Hobart Estate Co.*, 26 Cal.2d 412, 437, 159 P.2d 958 (1945). Appellants contend that although they saw a picture of a Munsingwear garment in December 1968, they could not tell, until they saw the garment itself, that it actually encompassed their ideas. Appellee argues that the picture was enough to put Garter-Bare on inquiry for purposes of the statute of limitations. *People v. Zamora*, 18 Cal.3d 538, 562, 134 Cal.Rptr. 784, 557 P.2d 75 (1976), states California law on this subject. In California it is a question of law whether a plaintiff has sufficiently pleaded circumstances that permit the consideration of a fraud claim more than three years after the events in question. Once that question is decided in favor of the plaintiff (and we have no problems here with the sufficiency of the pleading) disputed questions of fact, or facts susceptible of opposing inferences, are tried by the jury. Disputed fact questions existed here as to the date when the plaintiffs were put on notice, and also as to appellants' claim that appellee lulled them into non-action. These matters could not be disposed of on summary judgment.

*The Eighth Claim*

■ This claim charges Munsingwear and several Doe defendants (none of whom has been identified or served) with conspiracy to interfere in appellants' business relationships under the district court's diversity of citizenship jurisdiction. Their inclusion destroys that jurisdiction and the claim was properly dismissed, if only for this reason. *Molnar v. National Broadcasting Co.*, 231 F.2d 684 (9th Cir. 1956); see *Fifty Associates v. Prudential Ins. Co.*, 446 F.2d 1187, 1190 (9th Cir. 1970).[4]

---

**4.** Ordinarily leave to amend is generously granted but we note that appellants have admitted in answer to Interrogatory No. 564 that

they are willing to dismiss the Doe defendants. Should they seek leave to amend, on remand, the district court will be in a position to deter-

982

*The Patent Claims*

■ These claims and the counterclaim should not have been disposed of summarily. Patent claims are ones in which issues of fact often dominate the scene and summary judgment is allowed only with "great caution". *Technitrol, Inc. v. Control Data Corp.*, 550 F.2d 992 (4th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180 (8th Cir. 1976). Summary judgment is clearly the exception and not the rule in patent infringement cases. *Hycon Mfg. Co. v. H. Koch & Sons*, 219 F.2d 353 (9th Cir. 1955).

■ Where the structure and operation of a device is relatively simple and may be comprehended readily without the aid of experts, summary judgment is more safely employed than it is in cases of more complexity. Here the issues surrounding anticipation, infringement, and fraud on the Patent Office, involve chemical processes and call for distinguishing the properties and action of different types of friction element. The need for the guidance of expert testimony is apparent. We are uncomfortable with this record, in which the testimony of experts and others has not been put to the scrutiny of an orderly and coherent process of examination and cross-examination. This is not to say that summary judgment is never appropriate in patent cases or in other cases requiring expert testimony. We say only that, as to these patent issues, with fraud claims so closely intertwined, a disoriented battle of affidavits is not enough. We are not willing to gamble on the technical sufficiency of isolated bits of evidence to support the summary judgment that has denied appellants the jury trial they demanded.[5]

In *Kennedy v. Silas Mason*, 334 U.S. 249, 257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347 (1948), the Supreme Court stated:

"While we might be able, on the present record to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide."

Although the issues raised here are not comparable to the issues of national importance raised in *Silas*, they are of great interest to the parties and we are reluctant to hold that summary judgment has provided the requisite thoroughness "which it is the purpose of the judicial process to provide." On this record summary judgment was simply "too blunt an instrument with which to win the day". *American Manufacturers Mut. Ins. Co. v. American Broadcasting—Paramount Theaters, Inc.*, 388 F.2d 272, 280 (2nd Cir. 1967); *Miller v. General Outdoor Advertising Co.*, 237 F.2d 944, 948 (2nd Cir. 1964).

We referred above to the Local Rule of the District Court requiring proposed findings of fact on summary judgment motions. It is a local rule that is not universal. In this case it works out to be a trap. Reversed and remanded. Appellants are entitled to their costs on appeal.

WALLACE, Circuit Judge, concurring:

I concur with the majority and add this separate opinion only to clarify the purpose and effect of "findings of fact" when used in a summary judgment proceeding.[1] Fed. R.Civ.P. 52(a) makes it clear that findings

---

mine whether or not such leave should be granted. *Molnar v. National Broadcasting Co., supra*, at 686.

5. We note appellants' arguments that certain of the district court's findings of fact rely for their support on an affidavit that appellants claim was based on hearsay and was insufficient. If this is so, summary judgment should not have been predicated on that affidavit. *United States v. Dibble*, 429 F.2d 598, 601 (9th Cir. 1970). On remand the district court will have the opportunity to review this claim.

1. The need for such clarification is demonstrated by the unfortunate dicta in two of our recent opinions, *e. g., Dexheimer v. United States*, 608 F.2d 765, 766 (9th Cir. 1979) (finding of fact by trial judge on summary judgment was "not clearly erroneous"); *Aranda v. Van Sickle*, 600 F.2d 1267, 1272 (9th Cir. 1979) ("no reason to disturb" findings of the "trier of fact" in summary judgment), and by the appellee's brief, which argues we should defer to the "findings of fact" in this case and affirm summary judgment.

of fact and conclusions of law are not necessary for granting a summary judgment motion. Still, "findings of fact" are used by some district courts,[2] and they can serve a useful purpose.

The judicial function relative to fact-analysis on a motion for summary judgment is "limited to ascertaining whether any factual issue pertinent to the controversy exists; it does not extend to resolution of any such issue." *Nyhus v. Travel Management Corp.*, 466 F.2d 440, 442 (D.C.Cir.1972) (footnote omitted); *see* Fed.R.Civ.P. 56(c); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1264 (9th Cir. 1979); *Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F.2d 341, 343–44 (9th Cir. 1978). A "finding of fact" by the district court in a summary judgment proceeding thus constitutes only a finding that no genuine, material issue exists as to that fact; by the nature of summary judgment, it cannot be an indication that the trial court has weighed the evidence and found a fact in the traditional sense. *See Zweig v. Hearst Corp., supra*, 594 F.2d at 1264 n.3; *Tygrett v. Washington*, 543 F.2d 840, 844 n.17 (D.C.Cir.1974). *Cf. A R, Inc. v. Electro-Voice, Inc.*, 311 F.2d 508, 513 (7th Cir. 1962) (findings of fact in a summary judgment proceeding would be "ill advised" because "[t]hey would carry an unwarranted implication that a fact question was presented."). "Findings of fact" in a summary judgment proceeding are therefore not truly findings of fact and should perhaps bear a different label.

By whatever name such "findings" take, they can be helpful. "Proposed findings" highlight, for the benefit of the district court and opposing counsel, the precise facts which the moving party asserts are uncontested and legally dispositive. This allows the court and opposing counsel to focus on these facts and to determine whether there is any material factual issue. "Findings of fact" also help an appellate court "in making clear the basis for the trial court's decision and in indicating what that court understood to be the undisputed facts on which summary judgment was granted." 9 Wright & Miller, Federal Practice and Procedure: Civil § 2575 at 692–93; *see also Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976); *Tygrett v. Washington, supra*, 543 F.2d at 844 n.17.

Identifying the undisputed material facts and indicating the basis for summary judgment are the sole purposes of "findings of fact" on summary judgment. They are entitled to no deference on review where the rigid summary judgment standard of review, as outlined by the majority, *ante* at 421, must apply. *Tygrett v. Washington, supra*, 543 F.2d at 844, n.17; *Waganer v. Sea-Land Service, Inc.*, 486 F.2d 955, 960 (5th Cir. 1973). Courts and counsel should keep the proper function of "findings of fact" in mind when utilizing them in a summary judgment proceeding. Perhaps the benefit of the procedure can be saved, and such problems as we have here be obviated, if district courts would amend local rules to provide a new less confusing name for the document.

---

**2.** Local Rule for Central District of California 3(g) requires the moving party to submit "proposed findings of fact" with a motion for summary judgment. Judges of the Central District, for reasons which are unclear, sometimes sign "findings of fact" when they grant summary judgment.